PARKER WHEDON v. JEANNETTE C. WHEDON

No. 8326DC675

(Filed 1 May 1984)

1. **Divorce and Alimony § 17.3; Evidence § 48.3— witness never formally accepted as expert—testimony concerning amount of alimony—competency of testimony**

     There was no error in the trial court allowing a witness to testify concerning his computation of defendant's prospective tax liability on her alimony receipts even though the witness was never formally accepted by the trial court as an expert witness. The witness testified that he relied upon tax tables contained in the Internal Revenue Service Code, plus information concerning defendant's finances supplied to him by defendant's attorney to calculate defendant's potential tax liability, and by permitting the witness to testify, the court implicitly found that the witness was qualified as an expert witness.

2. **Divorce and Alimony § 20.3; Rules of Civil Procedure § 41.2— dismissing request for appellate attorneys' fees without prejudice—error**

     It was the trial court's duty, when presented with plaintiff's motion for an involuntary dismissal of defendant's request for attorneys' fees, to examine the quality of defendant's evidence and make a ruling on the merits. When the trial court did this, and denied defendant's motion, the additional language in the order indicating that the motion for appellate attorneys' fees was dismissed without prejudice must be disregarded as mere surplusage, G.S. 1A-1, Rule 41(b), since a party who has failed to produce sufficient substantive evidence to support a G.S. § 50-16.4 motion may not be allowed to "mend his licks" in a second hearing.

3. **Appeal and Error § 24.1— failure to preserve issue by cross-appeal—cross-assignment of error ineffectual**

     Defendant's attempt to argue (1) that the trial court erred in dismissing her request for attorneys' fees, (2) that the trial court erred in failing to find that plaintiff was in willful contempt for nonpayment of alimony and attorneys' fees, and (3) that the trial court's order concerning her 1982 alimony award was ambiguous and should be clarified, was ineffectual since the proper method to have preserved these issues for review would have been to cross-appeal rather than to attempt to raise the issues by cross-assignments of error. App. R. 10(b).

APPEAL by plaintiff from *Todd, Judge.* Order entered 25 January 1983 in MECKLENBURG County District Court. Heard in the Court of Appeals 11 April 1984.

This appeal marks the second time plaintiff and defendant have been before this court seeking resolution of various domestic difficulties. The current appeal therefore stems from a some-

what complex set of facts which may be briefly set out as follows. Plaintiff filed for divorce on 20 November 1980 based on a one-year separation from defendant. In his complaint, plaintiff admitted that defendant was entitled to reasonable alimony. After a hearing on 17 February 1981 on the issue of permanent alimony, the trial court entered judgment (1) sequestering the marital home and certain personal property for defendant and requiring plaintiff to pay the mortgage, *ad valorem* property taxes and hazard insurance thereon; (2) granting possession of an automobile to defendant and ordering plaintiff to maintain insurance thereon; (3) granting $1,259.00 per month in permanent alimony until defendant vacated the marital home, when the payments would increase to $1,467.00 per month and (4) ordering plaintiff to pay to defendant a sum calculated to equal defendant's income tax obligations on the alimony payments. From the order of the trial court, plaintiff appealed.

This court, in *Whedon v. Whedon,* 58 N.C. App. 524, 294 S.E. 2d 29, *disc. rev. denied,* 306 N.C. 752, 295 S.E. 2d 764 (1982), affirmed the trial court's decision, with the exception of the award of payments for defendant's income tax obligations. While recognizing that income tax consequences "are among factors properly considered in awarding alimony . . ." we held that the trial court's award was improperly calculated. "[T]he tax payments by plaintiff ordered here constitute further taxable income to defendant . . . [and] the order results in an interminable cycle of further payments by plaintiff to defendant. . . . The uncertainty thus created renders impossible determination of the precise amount of alimony awarded, and the reviewing court thus cannot determine the reasonableness or fairness of the award." (Citations omitted.) *Id.*

Thereafter, defendant sought an order holding plaintiff in contempt for failure to pay alimony, an amendment of the alimony award in light of *Whedon v. Whedon, supra,* and counsel fees. Following a hearing on 22 November 1982, an order was entered on 25 January 1983 dismissing defendant's motions to hold plaintiff in contempt and for attorneys' fees, and granting defendant's motion to amend the alimony award. From entry of the trial court's order, plaintiff appeals and defendant makes cross-assignments of error.

*Kennedy, Covington, Lobdell & Hickman, by Richard D. Stephens and Raymond E. Owens, for plaintiff.*

*Cannon and Basinger, P.A., by A. Marshall Basinger, II, for defendant.*

WELLS, Judge.

In his first argument, plaintiff contends that the trial court erred by amending the February 1981 alimony award under *Whedon v. Whedon, supra.* In the January 1983 order, the trial court concluded that the amount necessary to produce $1,259.00 per month net spendable income for defendant after payment of income taxes is $1,604.00 in 1982; $1,564.31 in 1983 and $1,549.58 in 1984 and thereafter, providing no changes are made in the tax laws. Plaintiff urges two grounds for his argument; first, that defendant did not present competent evidence of the respective finances and tax liabilities of the parties; and second, that the witness Brian Ives, who testified concerning the amount of alimony necessary to produce $1,259.00 per month net income after taxes, was not qualified as an expert and his testimony was based on incompetent evidence.

Plaintiff correctly points out that, in determining the amount of alimony, the trial court must consider the ". . . estates, earnings, earning capacity, condition, [and] accustomed standard of living of the parties . . ." N.C. Gen. Stat. § 50-16.5 (1976). Plaintiff overlooks the fact, however, that the issues of defendant's right to alimony and the respective finances of the parties were addressed in *Whedon v. Whedon, supra.* That decision constitutes the law of the case and plaintiff may not seek to raise the same questions in this appeal. *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E. 2d 673 (1956). The sole issue left for consideration on remand in *Whedon v. Whedon, supra,* was the *method* by which the amount of defendant's tax liability was to be computed.

[1] We hold that the witness Brian Ives was properly permitted to testify concerning his computation of defendant's prospective tax liability on her alimony receipts. Ives was never formally accepted by the trial court as an expert witness, but was nevertheless permitted to testify as an expert, after giving testimony concerning his qualifications. "The absence of a record finding in favor of . . . [the witness'] qualification is no ground for challeng-

ing the ruling implicitly made by the judge in allowing him to testify. *In such a case, at least if the record indicates that such a finding could have been made, it will be assumed that the judge found him to be an expert. . . ." Lawrence v. Insurance Co.,* 32 N.C. App. 414, 232 S.E. 2d 462 (1977), citing 1 Stansbury's North Carolina Evidence, Brandis Revision § 133 (1973). By permitting Ives to testify, the court implicitly found that Ives was qualified as an expert witness. Ives' qualifications clearly invoke the rule that a person may testify as an expert witness when his own knowledge is greater than that of the trier of fact, and is necessary to give a proper understanding of the facts. *Glenn v. Smith,* 264 N.C. 706, 142 S.E. 2d 596 (1965); *Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.,* 279 N.C. 313, 182 S.E. 2d 373 (1971). An expert witness may testify based either on his personal knowledge of certain facts, or based upon facts made known to him through hypothetical questions, or by a combination of these methods. *State v. David,* 222 N.C. 242, 22 S.E. 2d 633 (1942). Facts within the personal knowledge of an expert witness include those facts gathered from reports and other sources. The witness need not have observed each event or circumstance, *see Board of Transportation v. Warehouse Corp.,* 300 N.C. 700, 268 S.E. 2d 180 (1980) (dicta) (court permitted expert witness to testify concerning average rainfall and flooding in area presumably gathered from records and reports); *State v. DeGregory,* 285 N.C. 122, 203 S.E. 2d 794 (1974) (medical expert permitted to testify from observations, records and tests conducted by others).

In the case before us, Ives testified that he relied upon tax tables contained in the Internal Revenue Service Code, plus information concerning defendant's finances supplied to him by defendant's attorneys to calculate defendant's potential tax liability. We find no error in the trial court's rulings as to the competency of Ives' testimony, and therefore, this assignment of error is overruled.

[2] In his second argument, plaintiff contends that the trial court erred by dismissing defendant's request for appellate attorneys' fees without prejudice. Defendant sought attorneys' fees for preparation of the contempt hearing and for the preparation of the appeal in *Whedon v. Whedon, supra.* The trial court denied both of defendant's requests, apparently because defendant had failed to

produce sufficient evidence to support her claim.[1] The trial court noted that defendant's motion for appellate attorneys' fees was "denied and dismissed without prejudice." We believe this was error. The trial court's use of "dismissed without prejudice" may have been in reliance on N.C. Gen. Stat. § 1A-1, Rule 41(b) of the Rules of Civil Procedure, which governs motions for involuntary dismissals and provides that, in certain cases, the trial court may allow the moving party's motion for an involuntary dismissal without prejudice to the nonmoving party. The nonmovant may then correct the error which caused the dismissal and bring another lawsuit against the movant.

We recognize that the language of Rule 41(b) is somewhat vague and at first glance may appear to permit an involuntary dismissal without prejudice of a motion for counsel fees under N.C. Gen. Stat. § 50-16.4 when the movant has failed to present sufficient evidence to support such motion. We do not believe, however, that this is a proper application of the rule.

Neither party has cited, nor has our own research revealed, North Carolina decisions supporting the notion that a party who has failed to produce sufficient substantive evidence to support a G.S. § 50-16.4 motion, under Rule 41(b), may be allowed to "mend his licks" in a second hearing. *But see,* 5 J. Moore, *Moore's Federal Practice,* ¶ 41.14(1) (1982).

Applying the foregoing rule to the case before us, we hold that it was the trial court's duty, when presented with plaintiff's motion for an involuntary dismissal of defendant's requests for attorneys' fees, to examine the quality of defendant's evidence and make a ruling on the merits. This the trial court did, denying defendant's motion. The additional language in the order indicating that the motion for appellate attorneys' fees was dismissed without prejudice was without legal effect and must be regarded as mere surplusage.

[3] We turn now to defendant's cross-assignments of error. Defendant attempts to argue (1) that the trial court erred in dismissing her request for attorneys' fees, (2) that the trial court erred in failing to find that plaintiff was in wilful contempt for non-

---

1. The record of evidence clearly shows that defendant failed to produce sufficient evidence to support her motion for counsel fees.

payment of alimony and attorneys' fees, and (3) that the trial court's order concerning her 1982 alimony award was ambiguous and should be clarified.

The issue of what matters may be raised by cross-assignment of error by an appellee is governed by Rule 10(d) of the Rules of Appellate Procedure, which provides in pertinent part:

> Without taking an appeal an appellee may set out exceptions to and cross-assign as error any action or omission of the trial court to which an exception was duly taken or as to which an exception was deemed by rule or law to have been taken, and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken. . . .

In her cross-assignments of error, however, defendant does not contend that the trial court's order deprived her of additional basis supporting the court's order, but rather that certain portions of the order were erroneous. The proper means by which to raise such an attack is an independent appeal. Defendant's cross-assignments of error are therefore overruled.

As modified, the judgment of the trial court is affirmed.

Affirmed.

Judges BECTON and JOHNSON concur.